**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rick W. Costello, | ) No. CIV 04-1755-PCT-DKD |
| | ) |
| Plaintiff, | ) **ORDER** |
| | ) |
| vs. | ) |
| | ) |
| JoAnne Barnhart, Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff Rick Costello seeks judicial review of the Commissioner of the Social Security Administration's decision to adopt the Administrative Law Judge's (ALJ's) ruling denying his claim for disability benefits.  In denying Costello's claim, he argues that the ALJ 1) rejected the opinion of the state agency's examining psychologist; 2) adopted the opinion of a non-examining state agency physician; and 3) discounted the severity of Costello's mental impairments, all without providing clear and convincing reasons for doing so.[1]  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and remands for an award of benefits. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c).

---

[1]Because the Court concludes that a remand for further proceedings is unnecessary, it need not discuss Costello's other contentions that the ALJ erred 1) in substituting a categorical mental residual functional capacity assessment - a limitation to "simple, routine work tasks with limited public contact" - for the required function-by-function RFC assessment; and 2) in relying on vocational expert testimony that conflicted with job data in the *Dictionary of Occupational Titles*, without an explanation for the conflict.

1

**BACKGROUND**

2     At the time of the administrative hearing, Costello was a 44-year-old with a high

3     school equivalent education.  He applied for benefits in November 2001, with a disability

4     onset date of December 13, 2000 (Tr. 45).  He had a past work history as a lather and

5     tractor/trailer driver.  Following an administrative hearing, the ALJ found that Costello

6     suffered from degenerative disc disease, status post laminectomy and L5-Sl fusion .  The ALJ

7     also found that Costello had an adjustment disorder with depressed mood.[2]  The ALJ

8     concluded that although Costello's impairments were severe, he was not disabled because he

9     retained the residual functional capacity to perform work at the medium level of exertion:

10    simple, repetitive tasks with limited public contact (*Id*. at 22, 24).  In this appeal Costello

11    challenges only the ALJ's findings concerning his mental impairments.  Therefore, the Court

12    will limit the recitation of facts and procedural history to that narrow challenge.

13    Dr. Robb Schwartz, a psychologist, examined Costello at the request of the Disability

14    Determination Services, Arizona Department of Economic Security, and diagnosed him with

15    Adjustment Disorder with Depressed Mood (primarily manifesting as irritability, poor

16    frustration tolerance, and anger) (*Id*. at 145, 149).  Costello's claims made during the

17    evaluation that he "currently experiences substantial difficulties with frustration and anger"

18    were substantiated by Schwartz's clinical observations (*Id*. at 145).  When asked about

19    tearfulness or crying behavior, Costello told Schwartz that he "hold[s] it in" (*Id*.).  Schwartz

20    observed that this need to hold in feelings of despair or tearfulness "is likely related to his

21    five years working as a United States Marine" (*Id*.).  He also observed that Costello

22

23    _____

24        [2]An adjustment disorder is "a psychological response to an identifiable stressor that
results in the development of clinically significant emotional or behavioral symptoms."
Amer. Psych. Assoc., *Diagnostic and Statistical Manual of Mental Disorders* 679 (Michael

25    B. First ed., 4th ed. text rev., Amer. Psych. Assoc. 2000).  Diagnostic standards include

26    significant impairment in occupational functioning.  *Id*. at 683.  The specifier "with
Depressed Mood" is used when the predominant manifestations are symptoms such as

27    depressed mood, tearfulness, or feelings of hopelessness.  *Id*. at 679.

28

1    "appeared frustrated, irritable, and angry" during the evaluation (*Id*. at 149).  He listed his

2    secondary psychiatric limitations: "Rather intense frustration and anger, irritability, fatigue,

3    possible circumscribed memory deficits, calculation deficits, possible declines in fine-motor

4    coordination, and intermittent difficulties with receptive language.  Sometimes he seems to

5    misinterpret messages that are spoken to him" (*Id*.).

6           In assessing Costello's abilities to do work-related activities, Schwartz concluded that

7    Costello would have limited but satisfactory abilities in making the following occupational

8    adjustments:  following work rules; relating to co-workers; using judgment and interacting

9    with supervisors; and dealing with work stresses (*Id*. at 150).   He also indicated that

10   Costello's ability to adjust was fair - seriously limited but not precluded -in the following

11   areas:   dealing with the public; dealing with work stresses; functioning independently;

12   maintaining attention and concentration; and behaving in an emotionally stable manner (*Id*.

13   at 150-151).  He also concluded that Costello would be unable to understand, remember and

14   carry out complex job instructions; with a fair ability - seriously limited, but not precluded -

15   to understand, remember and carry out detailed, but not complex job instructions; and a

16   limited but satisfactory ability to understand, remember and carry out simple job instructions

17   (*Id*. at 151).

18          Dr. James Campbell, a non-examining state agency physician, noted in his Psychiatric

19   Review Technique Form that Costello had only a moderate degree of limitation regarding

20   any difficulties in maintaining concentration, persistence, or pace (*Id*. at 162).  He noted,

21   without explanation, that Schwartz's Medical Source Statement was "equivocal, largely

22   between good and fair" (*Id*. at 164).  In his Mental Residual Functional Capacity Assessment,

23   he indicated that Costello would suffer moderate limitations in eight areas of mental activity,

24   and concluded:  "This claimant due to combinations of adjustment disorder with somatic

25   complaints of back injury, chronic pain and physical limitations can only work in a low stress

26   environment, simple tasks with limited public contact" (*Id*. at 168).

27

28

1    At the administrative hearing, Costello and a vocational expert testified.  Costello

2    spoke of his back surgeries and the pain he experienced; said he was "a little bit" depressed,

3    but didn't "know how often a man's supposed to cry" (*Id*. at 186).  The vocational expert

4    testified that based upon the first hypothetical indicating Costello's past work history, with

5    the work limitations set forth by Dr. Campbell,[3] a person could not perform past relevant

6    work but could perform two other jobs available in the national economy:  packaging and

7    filling, and assembly (*Id*. at 189).  Counsel for Costello then proposed a second hypothetical

8    including the limitations set out by Dr. Schwartz.  Asked whether she would agree that based

9    upon the limitations in Dr. Schwartz's assessment form, a hypothetical claimant would be

10   precluded from any work, the vocational expert stated:

11          I think he would have difficulty with serious limitations of dealing with
            work stresses and maintaining attention and concentration.  It would make it
12          difficult.  And there -- he's also seriously limiting him to complex job
            instruction, carrying those out, which would keep him from doing anything
13          with complex instructions.

14   (*Id*. at 190).

15   The vocational expert testified that "the combination of the serious limitations in all of those

16   areas...would make it difficult for him to [be employed]...on a sustained basis" (*Id*. at 191).

17          In his decision, the ALJ found that Costello had not performed any substantial gainful

18   activity since the disability onset date; that he suffered severe impairments 1) degenerative

19   disc disease, status post laminectomy and fusion of the lumbar spine and 2) adjustment

20   disorder with depressed mood; that none of these impairments met or equaled any of the

21   listed impairments (*Id*. at 19-20).  He concluded that Costello had the residual functional

22   capacity for medium work:  "simple, routine work tasks with limited public contact," based

23   upon Dr. Campbell's assessment.  He further stated that Campbell's assessment was

24   "supported by the written evidence, including the *unrebutted* report of the consulting

25   _____

26          [3]The hypothetical given by the ALJ assumed a limitation of "simple, repetitive tasks,
     and *no* public contact," in contrast to Dr. Campbell's assessment of "simple, repetitive tasks
27   with little public contact."

28                                        - 4 -

psychologist" (*Id.* at 22) (emphasis added).  In addition, the ALJ rejected Costello's testimony concerning his physical impairments only, finding that his allegations regarding the intensity, persistence, and limiting effects of his pain were "not credible to the extent alleged" (*Id.* at 23).

## STANDARD OF REVIEW

The court must affirm the ALJ's findings if they are supported by substantial evidence and are free from reversible error.  *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence is more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In determining whether substantial evidence supports the ALJ's decision, the court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1988); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).  The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).  Thus, the Court must affirm the ALJ's decision where the evidence considered in its entirety substantially supports it and the decision is free from reversible error.  42 U.S.C. § 405 (g); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). The Court must do more than merely rubberstamp the ALJ's decision.  *Winans v. Bowen*, 853 F.2d 643, 645 (9th Cir. 1988).  However, where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  *Magallanes*, 881 F.2d at 750.

Examining physicians' opinions carry more weight than those of non-examining physicians.  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d)(1).  An examining physician's uncontradicted opinion may be rejected only for clear and convincing reasons supported by substantial evidence in the record.  *Lester v.*

1   *Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).  Even if the examining physician's opinion is

2   contradicted by another doctor, an ALJ may not reject an examining physician's opinion

3   without setting forth "specific and legitimate reasons" supported by substantial evidence in

4   the record.  *Id.*  The ALJ provides "specific and legitimate reasons" when he sets out a

5   detailed and thorough factual summary of the conflicting clinical evidence and presents his

6   interpretation of the evidence as supported by an explanation of why his interpretation rather

7   than the doctor's is correct.  *Reddick*, 157 F.3d at 725.

8          The opinion of a non-examining physician is not a specific and legitimate reason for

9   rejecting an examining physician's opinion.  *Lester*, 81 F.3d at 831.  In selected cases, an ALJ

10  may rely upon the non-examining physician's opinion to deny benefits as long as the

11  physician testifies at the hearing and is subject to cross-examination.  *See Penny v. Sullivan*,

12  2 F.3d 953, 957 (9th Cir. 1993); *Andrews v. Shalala*, 53 F.3d 1035, 1038-39 (9th Cir. 1995);

13  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).  "Without a personal medical evaluation

14  it is almost impossible to assess the residual functional capacity of any individual."  *Penny*,

15  2 F.3d at 957.

16                                      **DISCUSSION**

17         Costello first argues that the ALJ erred in rejecting the opinion of the state agency's

18  own examining psychologist, Dr. Schwartz, and impermissibly adopting the opinion of the

19  non-examining state agency physician, Dr. Campbell.  What in fact appears to have occurred

20  is that both the ALJ and Dr. Campbell mischaracterized Dr. Schwartz's opinion.  The ALJ

21  construed it as being consistent with Dr. Campbell's, based on Campbell's inaccurate

22  conclusion that Schwartz's assessment was "equivocal, largely between good and fair."

23  Schwartz made specific findings that Costello's ability to adjust was fair - seriously limited

24  but not precluded - in the following areas:  dealing with the public; dealing with work

25  stresses; functioning independently; maintaining attention and concentration; and behaving

26  in an emotionally stable manner.  Schwartz also indicated that Costello would be unable to

27  understand, remember and carry out complex job instructions; with a fair ability - seriously

28                                          - 6 -

1   limited, but not precluded - to understand, remember and carry out detailed, but not complex
2   job instructions; and a limited but satisfactory ability to understand, remember and carry out
3   simple job instructions.[4]   Needless to say, this mischaracterization does not constitute the
4   "specific and legitimate reasons" required in order to reject an examining physician's opinion.
5   *Reddick*, 157 F.3d at 725.  It was also insufficient to allow the ALJ to rely upon the non-
6   examining physician's opinion to deny benefits, where Dr. Campbell did not testify at the
7   hearing.  *Penny*, 2 F.3d at 957.[5]

8        Separate and apart from his mistaken reliance on Campbell's inaccurate assessment
9   of Schwartz's Medical Source Statement, the ALJ further erred by ignoring the opinion of
10  the vocational expert that, given the limitations set forth by Dr. Schwartz, that a person so
11  limited would have difficulty sustaining work activity.  Because the ALJ adopted the opinion
12  of a non-examining, non-testifying state agency physician, the Court finds its decision is not
13  supported by substantial evidence.  *See Bowman v. Barnhart*, 310 F.3d 1080, 1085 (8th Cir.
14  2002).

15       Costello also contends that the ALJ committed legal error by discounting the severity
16  of Costello's *mental* impairments, without providing clear and convincing reasons for doing
17  so.  The Court agrees.  The only credibility finding made by the ALJ dealt with Costello's
18  physical impairments:   he found that Costello's "allegations regarding the intensity,

19

20       [4]He also relies on Dr. Schwartz's statement that Costello's physical impairments would
21  likely be the greatest impediment to his ability to work.  He omits Schwartz's next statement
    that Costello's psychiatric limitations were "secondary" to his physical impairments -
22  meaning that his mental impairments followed and resulted from his earlier physical
23  problems.  *Stedmam's Medical Dictionary* 1320 (5th ed. 2005).

24       [5]The Court finds disingenuous the Commissioner's statement that Dr. Campbell was
25  "not a crucial witness" and therefore the ALJ acted within his discretion in denying Costello's
    request to have him subpoenaed for cross-examination at the hearing.  The ALJ relied on Dr.
26  Campbell's assessment in its decision, which substantially contradicted Schwartz's
27  assessment, as evidenced by the different conclusions of the vocational expert when asked
    hypothetical questions based upon their respective assessments.

28

- 7 -

1    persistence, and limiting effects of his pain" were "not credible to the extent alleged."  He

2    then gives seven reasons taken from the objective medical evidence of record to support this

3    statement:  all seven deal with his physical impairments.  *See* Tr. at 24.[6]  Because the ALJ

4    failed to even address Costello's credibility as to his mental impairment, absent any evidence

5    or claim of malingering, he neglected to provide the required clear and convincing reasons

6    for rejecting his testimony.  *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

7                                                    **REMAND**

8            The decision whether to remand a case for additional evidence or simply to award

9    benefits is within the discretion of this Court.  *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th

10   Cir. 1989).  A remand for further proceedings is unnecessary if the record is fully developed

11   and it is clear from the record that the ALJ would be required to award benefits.  *Holohan*

12   *v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).  This rule recognizes the importance of

13   expediting disability claims.  *Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994).

14          When the ALJ does not provide adequate reasons for rejecting an examining

15   physician's opinion, that opinion is credited "as a matter of law."  *Lester v. Chater*, 81 F.3d

16   821, 834 (9th Cir. 1996) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)).

17   Similarly, where the ALJ fails to properly refute a claimant's testimony regarding his

18   symptoms, that testimony is also accepted as true as a matter of law.  *Rodriguez v. Bowen*,

19   876 F.2d 759, 761 n.6 (9th Cir. 1989).

20          **IT IS THEREFORE ORDERED GRANTING** Plaintiff Rick W. Costello's Motion

21   for Summary Judgment (Doc. #12).

22          **IT IS FURTHER ORDERED DENYING** Defendant JoAnne Barnhart's Cross-

23   Motion for Summary Judgment (Doc. #17).

24   _____

25          [6]Because Costello does not contest that portion of the ALJ's decision regarding his

26   physical impairments, the Court need not consider whether the ALJ's credibility

27   determination as to Costello's testimony regarding the severity of those symptoms was

     adequate.

28                                                    - 8 -

1      **IT IS FURTHER ORDERED REMANDING** this case for an award of benefits.

2      DATED this 27th day of September, 2005.

3

4

5

6

7                                   David K. Duncan
8                         United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28